UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE TERRY,

    Petitioner,                                         Case No. 09-cv-12211

v.                                                   HONORABLE STEPHEN J. MURPHY, III

C. ZYCH,

    Respondent.
_____/

**OPINION AND ORDER DENYING**
**PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Lawrence Terry has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the results of a prison disciplinary proceeding. Terry is currently incarcerated at the Federal Correctional Institution in Milan, Michigan. For the reasons set forth below, the Court denies the petition.

I.

Terry was convicted in the United States District Court for the Eastern District of Wisconsin of conspiracy to distribute in excess of 5 kilograms of cocaine and 50 grams of cocaine base, 21 U.S.C. §§ 841(a)(1), 846. On October 27, 2006, he was sentenced to a 108-month term of imprisonment and 10 years of supervised release. Terry's sentence was subsequently reduced on October 2, 2008, to an 87-month term of imprisonment and 10 years of supervised release pursuant to 18 U.S.C. § 3582(c)(2). *See* Order Granting Motion for Sentence Reduction Pursuant to 18 U.S.C.§ 3582(c)(2), attached as Ex. 2 to Response Brief. On the date of the incident the subject of this petition, Terry was incarcerated at the Federal Prison Camp (FPC) in Duluth, Minnesota.

On December 17, 2007, Lieutenant T. Wilson, a staff member at the Federal Prison Camp, Duluth, Minnesota, filed an incident report relating to an incident that occurred on November 15, 2007. The report charged Terry with introduction of a hazardous tool and escape from an open institution. *See* Incident Report, attached as Exhibit 4 to Response Brief. The report alleged that on November 15, 2007 at 7:41 p.m., Terry and another inmate, James Brown, left the institution grounds without authorization to meet an individual who provided them with contraband (tobacco, GNC supplements and at least one cell phone) for the purpose of distributing the contraband to the inmate population. Terry was given a copy of the incident report and advised of his rights. *Id.* at 2. He denied involvement. *Id.* Following an investigation, the incident report was referred to the Unit Disciplinary Committee for further disposition. *Id.*

The Unit Discipline Committee (UDC) held a hearing on December 28, 2007. At the hearing, Terry denied the charges and denied knowing the other inmates involved. *See id.* Because of the severity of the charges, the UDC referred the matter to the Disciplinary Hearing Officer (DHO) and recommended maximum disallowance of good conduct time, 30 days of disciplinary segregation, one year loss of telephone usage, visitation, and commissary. *Id.*

On December 28, 2007, Terry was provided with advance written notice of the upcoming DHO hearing and a notice of his rights during the hearing. *See* Notice of Disciplinary Hearing Before the DHO (Notice of Disciplinary Hearing) and Notice of Inmate Rights During Hearing, attached as Exhibits 6 and 7 to Response Brief. Terry requested a staff representative to represent him at the hearing and requested one witness. *See* Notice of Disciplinary Hearing. On December 31, 2007, a staff representative was

appointed to represent Terry. *See* Duties of Staff, attached as Exhibit 8 to Response Brief.

The DHO hearing was conducted on January 14, 2008 at the Federal Prison Camp in Duluth, Minnesota. Terry denied the charges against him. *Id.* at 2. *See* Disciplinary Hearing Officer Report, attached as Exhibit 9 to Response Brief. Although no witnesses or documentary evidence were presented, the DHO expunged the incident report, "based on lack of evidence connecting [petitioner] to [the] incident." *Id.* Therefore, no sanctions were imposed. *Id.*

Following an audit of the DHO hearing it was determined that the DHO had not considered all the evidence available to him during the first hearing. *See* Regional Administrative Remedy Appeal, attached as Exhibit 15 to Response Brief at 3. On June 26, 2008, Terry, who, in the meantime had been transferred to FCI Milan, was provided with written notice of a new DHO hearing and his rights at the hearing. *See* Notice of Discipline Hearing Before the DHO, attached at Exhibit 11 to Response Brief; Inmate Rights at Discipline Hearing, attached as Exhibit 12 to Response Brief.

A rehearing was held on January 7, 2009. *See* Discipline Hearing Officer Report of January 7, 2009 hearing, attached as Exhibit 10 to Response Brief. Terry again denied any involvement in the incident. He claimed to have been at the gym during the relevant time period. He stated that two inmates would corroborate his story. The two inmates who Terry requested as witnesses had been transferred to different institutions. They submitted written statements which the DHO considered. The DHO also considered a Special Investigative Services report, including photographs, and confidential informant information. The DHO determined that there was no evidence to support the charge of introduction of a hazardous tool and expunged this charge. *See id.* The DHO did find, however, based

upon the greater weight of the evidence, that Terry committed the act of escape from an open institution. *Id.* at 4. Terry was sanctioned with the loss of 27 days of good conduct time, 20 days of disciplinary segregation (suspended 90 days), six months loss of phone and commissary privileges (suspended 90 days), and one year loss of visitation privileges (suspended 90 days). *Id.* The DHO also recommended a disciplinary transfer which had already been executed. *Id.*

Terry appealed the DHO's decision to the Regional Office, which affirmed the decision. *See* Regional Administrative Remedy Appeal, attached as Exhibit 15 to Response Brief. Terry filed an appeal to the Central Office for Inmate Appeals. On May 4, 2009, the Central Office denied Terry's appeal. *See* Exhibit 16 to Response Brief.

Terry then filed the pending habeas petition, in which he asks the Court to reinstate his good conduct time, expunge his record, and order him returned to a prison camp because, he argues, his due process rights were violated when prison staff failed to follow proper procedures during the rehearing on his disciplinary action.

Zych has filed a response to the petition.[1] Terry has filed a reply brief.

II.

An inmate's right to due process requires that, where a prison disciplinary hearing may result in the loss of good conduct credits, a prisoner must receive the following protections: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with reasonable concerns regarding institutional and individual security and

---

[1] Zych filed a Motion for Extension of Time to File Response, requesting a seven-day extension. The Court finds that the request for an extension is made in good faith and is not an attempt to unnecessarily delay the proceedings. Therefore, the Court grants the motion.

4

safety, to call witnesses; (3) an opportunity to present his own testimony and documentary evidence; and (4) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

The BOP disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. On June 26, 2008, in compliance with 28 C.F.R. § 541.15(i) and *Wolff*, Terry was given written notice of the rehearing and advised of his rights at the discipline hearing. *See* Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing, attached as Exhibits 6 and 7 to Response Brief. The rehearing was conducted on January 7, 2009. Terry was given the opportunity to speak in his own defense and gave a statement in which he denied the charges. He was provided a staff representative and presented two witnesses, through written statement, on his own behalf. After hearing the evidence, the Discipline Hearing Officer prepared a written record of the event and imposed sanctions. *See* DHO Report, attached as Exhibit 8 to Response Brief.

The Court concludes that the procedural due process requirements of *Wolff* have been met. Terry argues the requirements were not satisfied because the warden of FCI Milan was without authority to review a disciplinary hearing that had been conducted at a different facility. The BOP's Program Statement 5270.07 sets forth the procedure for review of disciplinary hearings by the Warden or a designee and states in relevant part:

> [T]he Warden or designee is to audit and review disciplinary hearings and dispositions to assure conformity with the provisions of this policy. The Warden may return a disciplinary action to the DHO for rehearing or other indicated action upon determining that the disciplinary hearing and/or disposition was not in conformity with the provisions of the disciplinary policy. The Warden's reasons for this action must be documented in writing. The Warden may not order an increase in any valid disciplinary sanction imposed.

Program Statement 5270.07, Chapter 7, p. 11.

Program Statement 5270.07 does not require that a warden may review only those disciplinary hearings conducted at the warden's facility. A warden's interest in the safety and management of the warden's facility gives the warden a valid interest in ensuring that proper procedures are followed in disciplinary proceedings impacting inmates in the warden's facility. The Court "is not aware of any cases suggesting that the federal Due Process clause bars the ordering of a second hearing and it is not clear why this should even be the case." *Lunney v. Brureton*, No. 04-2438, 2005 WL 121720, *14 (S.D.N.Y. Jan. 21, 2005) (Report and Recommendation adopted by 2005 WL 433285 (S.D.N.Y. Feb. 23, 2005)). Where, as here, "the essential requirements of Due Process were met – such as notice of the charges and a hearing conducted in accordance with Due Process, . . . – there is no basis on which to conclude that [the petitioner's] constitutional rights were violated." *Id.* Even "an acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge." *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996).

Terry also objects to the amount of time that elapsed between the disciplined conduct and the rehearing. There is, however, no time limit on when a DHO hearing or rehearing is to be conducted. *See Mayo v. Hogsten*, No. 06-2241, 2007 WL 1521232, *5 (M.D. Pa. May 23, 2007) ("The Constitution only requires compliance with minimal federal due process standards protected by the Due Process Clause of the Fourteenth Amendment. *Wolff* does not set a three-or seven-day limit, or any time limit, for the hearing."). The only rule governing the timing of discipline hearings states that a petitioner shall receive at least 24 hours advance written notice of the charges before his appearance

before the DHO. *See* 28 C.F.R. § 541.17(a). In this case, Terry received several months' written notice of the charges and of the discipline hearing. Moreover, to show the delay amounted to a due process violation, Terry must establish that the delay prejudiced his ability to defend against the charge. *See Donn v. Baer*, 828 F.2d 487, 490 (8th Cir. 1987). Terry fails to show that he was prejudiced by the delay. He was able to speak on his own behalf and present statements from two witnesses. He does not allege any specific way in which the evidence would have been impacted had the hearing been conducted sooner.

Finally, once a court has decided that the procedural due process requirements of *Wolff* have been met, it must determine only whether there is "some evidence" which supports the decision of the prison disciplinary officer or board. *See Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455 (1985). Indeed, "[n]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995). In the instant case, the hearing officer relied upon the investigative report, video surveillance footage, the statement of the other prisoner who left the prison grounds, and the statements of Terry's two witnesses, who could not place Terry at the gym at the time of the escape. On the basis of this evidence, the hearing officer found Terry guilty. The Court concludes that there existed some basis in fact to support the hearing officer's finding of guilt. The fundamental fairness guaranteed by the Due Process Clause does not allow courts to set aside decisions of prison administrators that have some basis in fact. *Hill*, 472 U.S. at 456.

Thus, based upon the foregoing, the Court concludes that the prison disciplinary proceedings in Terry's case complied with the requirements of *Wolff* and with the regulations governing prison disciplinary proceedings.

III.

**WHEREFORE**, it is hereby **ORDERED** that:

- The petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

- Respondent's Motion for Extension of Time to File Response (docket no. 4) is **GRANTED** and the response is accepted for filing.

**SO ORDERED.**

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: March 11, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 11, 2010, by electronic and/or ordinary mail.

        s/Alissa Greer
        Case Manager